UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **KIMBERLY A RICHARD** | **CASE NO. 2:18-CV-01257** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LA DEPT CHILDREN & FAMILY SERVICES** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 69] filed by the state of Louisiana through the Louisiana Department of Children and Family Services ("DCFS"), seeking dismissal of all claims raised against it in this employment discrimination suit. Plaintiff Kimberly Richard opposes the motion. Doc. 73.

### I.
### BACKGROUND

This suit arises from Richard's employment with DCFS from 1985 to 2018 and relates to her allegations of discrimination based on her race (African-American) and sex (female). Richard began her employment with DCFS as a Clerk Typist II and ended as Economic Stability Supervisor (ESS). She alleges that, since 2012, DCFS has discriminated against her and retaliated against her in the following particulars: (1) imposing excessive work assignments and unreasonable deadlines in 2012, and retaliating against her by the ensuing failures to promote for complaining of these incidents; (2) awarding the Area Director (AD) position she sought to a white male applicant in 2015;

(3) preventing her from applying for the Economic Stability Manager (ESM) position in 2015 and eventually awarding it to a white female; (4) awarding the Economic Stability Consultant (ESC) position that she sought in 2015 to a white female; and (5) awarding the ESM position that she sought to a black male in 2018. Doc. 1. After pursuing remedies through the EEOC for her workload complaints in 2014 and the denial of promotion to ESM in 2018, she filed suit in this court on September 24, 2018, raising claims of discrimination and retaliation under 42 U.S.C. § 1981, Title VII of the Civil Rights Act, and the Louisiana Employment Discrimination Law ("LEDL").

DCFS filed a motion to dismiss, based *inter alia* on Richard's failure to timely exhaust her administrative remedies with respect to certain discrimination claims. Doc. 10. The court granted the motion in part, dismissing all claims under Title VII and the LEDL as unexhausted and prescribed except as they related to the 2018 ESM vacancy. Docs. 30, 35. The claims under § 1981 survived as potentially subject to a longer statute of limitations. *Id.* In the Report and Recommendation, adopted without alteration by the district court, the Magistrate Judge also advised Richard that her allegation of a single remark during a meeting did not provide sufficient support for her hostile environment claim but that she could amend and attempt to provide additional support. Doc. 30. Since that time, however, Richard has made no motion to amend the pleadings.

DCFS now moves for summary judgment on Richard's remaining claims, asserting that (1) her § 1981 claims are barred on the basis of sovereign immunity and likewise fail on the merits, and her pre-2018 § 1981 claims are time-barred and (2) there is no merit to her discrimination and retaliation claims based on the 2018 ESM vacancy under applicable

law. Doc. 69, att. 2. It also asserts that, based on Richard's failure to amend her complaint, there is no need to consider the merits of any hostile environment claim. *Id.* Finally, DCFS seeks attorney fees under 42 U.S.C. § 1988. *Id.* Richard opposes the motion and requests that the court strike exhibits attached by DCFS that she alleges were not previously disclosed in discovery. Doc. 73. In its reply DCFS likewise requests that the court strike exhibits and argument relating to conduct that allegedly occurred after the 2018 hiring decision. Doc. 80.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

**A. Requests to Strike Exhibits**

Richard asserts that attachments to Defense Exhibits C & E [doc. 69, atts. 12 & 15], which are the affidavits of Renita Smith and Robert Fontenot, should be excluded because they were not disclosed in prior discovery. Both affidavits were executed on June 13, 2022, one day before DCFS's motion for summary judgment was filed. The affidavit attachments include DCFS organizational charts and a job description illustrating Smith's responsibilities as human resources manager. As DCFS points out, these attachments are merely illustrative of facts set out in the affidavits based on the affiants' personal knowledge. Even if it struck the exhibits, the court would find no basis for striking the affidavit statements themselves. Accordingly, this request is denied.

Meanwhile, DCFS requests that the court exclude from its analysis "any evidence, claims and/or argument that relate to conduct alleged to have occurred after March 2018" on the grounds that the complaint relates only to allegations of discrimination and

retaliation regarding promotion denials in April 2015, July 2015, and March 2018. The court agrees that any evidence as to subsequent incidents of discrimination or retaliation are not relevant, and that any attempt by plaintiff to raise new claims in her opposition to the motion for summary judgment is improper.

### B.  § 1981 Claims

Richard asserts that DCFS unlawfully discriminated against her based on her race in violation of 42 U.S.C. § 1981. This statute does not abrogate a state's sovereign immunity under the Eleventh Amendment, which generally protects a state from suits for monetary damages filed against it in federal court by its citizens. *Bates v. Univ. of Tex. Med. Branch*, 425 F.Supp.2d 826, 839 (S.D. Tex. 2003); *Johnson-Blount v. Bd. of Sup'rs for Southern Univ.*, 994 F.Supp.2d 780, 784 (M.D. La. 2014). The Louisiana DCFS is an arm of the state and thus entitled to sovereign immunity under the Eleventh Amendment. *E.g.*, *Cummings v. La. Dep't of Children & Family Servs.*, 2015 WL 5015311 (W.D. La. Aug. 21, 2015).

Richard concedes that her § 1981 claim is barred by the doctrine of sovereign immunity, but requests that the court "deny Defendant's motion or, in the alternative, grant Plaintiff leave to amend the complaint to add Robert Fontenot in his official capacity with DCFS." Doc. 73, p. 21. DCFS's entitlement to sovereign immunity compels dismissal of the § 1981 claims against it, however. As for amendment, the time for doing so as a matter of course has passed. Any request would thus be left to the court's discretion. While the court should "freely give leave [to amend] when justice so requires," it may deny the request for a "substantial reason" such as undue delay, undue prejudice, futility, and

repeated failure to cure deficiencies. Fed. R. Civ. P. 15(a)(2); *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014). In this analysis, undue prejudice has been found when the amendment is proposed "after the close of discovery; after dispositive motions have been filed, briefed, or decided, or on the eve of trial." *SMH Enterps., LLC v. Krispy Krunchy Foods, LLC*, 340 F.R.D. 554, 562 (E.D. La. 2022) (collecting cases). Meanwhile, futility alone provides a sufficient basis for denying leave to amend and amended claims are futile if they would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

    Adding claims for damages against Fontenot in his official capacity would not cure the instant defect because state officials like Fontenot are likewise "immune under the Eleventh Amendment when they are sued in their official capacities." *Strong v. Grambling State Univ.*, 159 F.Supp.3d 697, 706 (W.D. La. 2015) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). As noted by DCFS, one exception to sovereign immunity is an official capacity claim for injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908). To fit within this narrow window, however, the claimant must bring a claim seeking (1) specific and prospective injunctive relief (2) from an officer in his official capacity (3) for a violation of federal law. *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 507 (5th Cir. 2021). This case was filed nearly four years ago and is set for trial in one month. Richard has made a generic request for injunctive relief in the complaint, asking that the court enjoin DCFS from engaging in the alleged unlawful practices identified therein. However, there is no reference to any specific ongoing illegal practice other than the discrete instances of

promotion denials. Accordingly, any new claim for prospective injunctive relief against Fontenot is too prejudicial and untethered from the original complaint to be considered this close to trial and the § 1981 claims as currently pled must be dismissed.[1]

### C. 2018 Denial of Promotion

Finally, the court comes to the merits of the discrimination and retaliation claims based on the denial of promotion to the 2018 ESM vacancy. Because the LEDL is similar in scope to Title VII, Louisiana courts look to federal jurisprudence to interpret Louisiana employment discrimination law. *King v. Phelps Dunbar LLP*, 743 So.2d 781, 787 (La. 1999). Accordingly, a plaintiff who fails or succeeds in meeting her burden under Title VII will do likewise in an identical claim brought under the LEDL. *Martin v. Winn-Dixie La., Inc.*, 132 F.Supp.3d 794, 811 (M.D. La. 2015).

#### 1. Discrimination

Where there is no direct evidence of discrimination, courts apply the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine an employer's liability under Title VII. *Reeves*, 530 U.S. at 142. To establish a prima facie

---

[1] Additionally, the four-year statute of limitations under § 1981 only applies to claims that were not cognizable prior to 1991 amendments to the Civil Rights Act. *Lewis v. City of Shreveport*, 2018 WL 752362, at *5 (W.D. La. Feb. 7, 2018). Otherwise the applicable statute of limitations is drawn from state law, which results in a one-year limitations period for claims arising in Louisiana. *Id.* Claims based on failure to promote were cognizable under § 1981 prior to the amendments, so long as the new position is significantly different from the current position—which has been established in the Fifth Circuit by showing the addition of supervisory duties along with higher salary and potential for advancement. *Id.* (citing *Police Ass'n of New Orleans ex rel. Cannatella v. City of New Orleans*, 100 F.3d 1159, 1171 (5th Cir. 1996)). DCFS has shown that both the ESM and AD positions Richard sought in 2015 would have entailed a promotion within its organizational chart over her position of ESS, with additional supervisory responsibilities. Doc. 69, atts. 16 & 17. This chart shows that ADs have direct supervision over ESMs while ESMs supervise employees at the ESS level. *Id.* DCFS cites to no evidence of the applicable salary ranges but asserts in its brief that promotion to ESM also entailed a significant increase in salary range. Doc. 69, att. 2, pp. 15–16. Richard does not refute this statement. While there is inadequate evidence cited under these arguments, and the court will not at any rate offer an advisory opinion as to the applicable statute of limitations, Richard's allegations are insufficient to show for the purposes of her request to amend that a longer period potentially applied to her § 1981 claims even if she did find a legally cognizable way to raise them.

case of discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment decision; and (4) after the adverse employment decision, the position was filled by someone from outside her protected class. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. The employer's burden is one of production rather than persuasion and does not involve a credibility assessment. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2011). If it meets this requirement, the burden shifts back to the plaintiff to show that either (1) the employer's proffered explanation is not true and is instead a pretext for discrimination or (2) the employer's reason, while true, is not the only reason for its action and another "motivating factor" is plaintiff's protected characteristic. *Id.* Accordingly, the plaintiff bears the ultimate burden of persuading the trier of fact that she was the victim of illegal discrimination. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

  DCFS asserts that it is entitled to summary judgment on this claim because (1) Richard lacks direct evidence of discrimination and (2) under the burden-shifting framework above, she can neither establish a prima facie case nor refute DCFS's explanation for the promotion denial because the applicant ultimately selected, Darren Nevels, was better qualified. Richard asserts that she has direct evidence of discriminatory intent by way of comments from Fontenot and that Nevels's relative qualifications, at any rate, are insufficient to defeat her prima facie showing. Doc. 73.

As referenced above, the *McDonnell Douglas* framework only applies where a claim of discrimination is supported by circumstantial evidence. A plaintiff may also prevail on a Title VII claim if she can show direct evidence of discriminatory intent. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Comments by an employer are only 'probative of an employer's discriminatory intent' if the comments are 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [the protected characteristic] was an impermissible factor in the decision to terminate the employee.'" *Dunn v. Hunting Energy Servs.*, 288 F.Supp.3d 749, 768 (S.D. Tex. 2017) (quoting *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). Accordingly, an employer's remark must be (1) related to the protected class of persons, (2) proximate in time to the adverse decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue to serve as direct evidence of discriminatory animus. *Id.* (citing *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)).

Richard's purported direct evidence comes in the form of a comment made by Fontenot on March 22, 2018, around the time her ESM application was pending. Specifically, Richard alleges that Fontenot referred to her as "the black Chris" at a regional manager and supervisors' meeting in front of Richard and other colleagues.[2] Richard does

---

[2] Fontenot testified that he had mistakenly called Fontenot by the name of Chris Forestier, a white female DCFS employee who was not there, and was attempting to make light of the incident. Doc. 69, att. 11, pp. 127–28.

not allege any negative inferences that could be drawn from the comparison to "Chris," however, or implications relating to her pending application. Accordingly, it does not satisfy the fourth factor of the test set forth in *Auguster*, supra, and the claim must instead be analyzed under *McDonnell Douglas*.

DCFS argues that Richard cannot set forth a prima facie case because Nevels, the black male DCFS employee who was ultimately selected for the 2018 ESM vacancy, was better qualified. The relevant question, however, in establishing a prima facie case is only whether Richard herself was qualified for the position. The issue of whether the candidate selected was better qualified instead goes to DCFS's burden of showing a legitimate and non-discriminatory reason for its decision. There is no dispute that Richard was a member of two protected classes, as alleged under her claim of intersectional discrimination, that she met the basic qualifications to be considered for the ESM vacancy, and that the position was filled by someone who was not a black female. Accordingly, the burden shifts to DCFS to articulate its reasons for the decision—namely, the comparative qualifications of Nevels.

An employer can meet his burden of production on a failure to promote discrimination claim by asserting that the other candidate was selected on the basis of superior qualifications and submitting evidence in support of those qualifications. *Price v. Fed Ex Corp.*, 283 F.3d 715, 720–21 (5th Cir. 2002). The burden then shifts to plaintiff, who can withstand summary judgment by showing that this is not the real reason for the employment decision. *Id.* at 720. This showing may take multiple forms, including demonstrating that the employer's explanation is unworthy of credence because the

plaintiff was "clearly better qualified," as opposed to merely better or as qualified, than the candidate selected. *EEOC v. La. Office of Cmty. Svcs.*, 47 F.3d 1438, 1444 (5th Cir. 1995).

At the time of the vacancy both Nevels and Richard were in the ESS position. Richard had a longer tenure with both DCFS (24 years versus Nevels's 12 years) and in the ESS position (11 years versus Nevels's 6 years). DCFS maintains that Nevels was selected because of his superior qualifications, however, and also shows the following: (1) Nevels possessed a bachelor's degree while Richard had only an associate's degree; (2) Nevels had experience supervising a larger number of people through his work as a restaurant manager at Burger King and experience as director of the music ministry at his church; (3) Nevels had additional relevant experience through his gratuitous work as co-Lead Area Manager for the Lake Charles DCFS division, training employees on disaster response, which entailed greater responsibility than Richard's relevant additional experience serving on the Employee Assistance Program committee; and (4) Nevels outperformed Richard at the interview stage, with the two candidates receiving respective scores of 38 and 33 at the close of the screening process. Accordingly, DCFS has shown relevant and objective standards by which Nevels could be judged more qualified for the promotion and thus meets its burden of production.

Richard attempts to show pretext by arguing that DCFS relied on subjective interview scores based on her demeanor, which stood in for her employer's discriminatory animus. She notes that, according to Nevels's application, he only managed 15 employees at Burger King though he later testified that the number was higher. She further notes Nevels's testimony that he received a verbal reprimand for breaching a confidentiality

policy several years ago when he used a retired employee in an assessment, but that at the decision of Fontenot, who was then his supervising ESM, and the Area Director, he received no formal discipline. Doc. 73, att. 9. Richard, meanwhile, points to her own record of positive evaluations and no disciplinary history, which DCFS does not dispute.

Taken together, this evidence is still insufficient to create a fact issue as to whether DCFS's reasons for selecting another candidate were pretextual. Despite Richard's longer tenure, Nevels had superior educational experience and relevant additional experience both inside and outside of DCFS. The existence of one disciplinary infraction several years before the hiring decision does not call Nevels's qualifications into question, and the fact that DCFS relied in some part on subjective measures through the oral interview process is likewise insufficient to undermine the ways in which Nevels's objective experience outshone Richard's. There is nothing in the record to create a factual issue as to whether DCFS's ranking of Nevels's qualifications was pretextual. Additionally, the "clearly better qualified" standard through which Richard could also prove pretext is a difficult one in order to avoid judicial second-guessing of business decisions. *Price*, 283 F.3d at 723. Accordingly, "it is well-established that better education, work experience, and/or longer tenure with the company does not necessarily make a candidate clearly better qualified" and the plaintiff will only prevail if she can show that selection of the other candidate was not within the "realm of reason." *Churchill v. Tex. Dep't of Crim. Justice*, 539 F. App'x 315, 322 (5th Cir. 2013) (citations omitted). Richard's evidence of her longer tenure and her record of good evaluations do not meet this standard. The motion for summary

judgment must therefore be granted as to her claims for discrimination under Title VII and the LEDL.

### 2. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in an activity protected under Title VII; (2) her employer took an adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse action. *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). The causal connection must be "but for," meaning that the adverse action would not have occurred without the protected activity. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360–61 (2013). If she makes this showing, the burden shifts as above to the employer to articulate a legitimate, non-discriminatory reason for its decision and then to the plaintiff to show that this reason is actually a pretext retaliation. *Septimus v. Univ. of Houston*, 399 F.3d 601, 610–11 (5th Cir. 2005).

It is undisputed that the denial of promotion is an adverse employment decision and that filing a charge of discrimination is protected activity under Title VII. Accordingly, the question is whether Richard can establish a causal link between the two. Because Richard's 2018 EEOC charge related to her 2018 denial of promotion, the relevant protected activity for this retaliation claim is her prior EEOC charge filed and dismissed in 2014 and an internal complaint filed the year before. Temporal proximity alone can show causation, but only when the two events are very close. *Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015). While Richard alleges that she was subjected to harassment and increased monitoring after she filed her 2018 charge, this has no bearing on whether the promotion

denial of which she complained in that charge was retaliatory. The promotion denial itself was also too far removed in time from her prior complaints to establish a causal link based on proximity alone. Finally, even if she could meet her burden of setting forth a prima facie case, DCFS's legitimate reasons for offering the promotion to Nevels stand as set forth above and Richard has produced no evidence to suggest that these reasons were pretext for retaliation. Accordingly, summary judgment must also be granted as to this claim.

### D. Attorney Fees

Finally, DCFS moves for attorney fees under 42 U.S.C. § 1988. This statute allows the court to award attorney fees to the prevailing party in a civil rights action, but vests the decision in the court's discretion. 42 U.S.C. § 1988(b). A prevailing defendant may only receive attorney fees under this provision if the court finds that the plaintiff's claim "was frivolous, groundless, or unreasonable, or that the plaintiff continued to litigate it after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1988).

Here the plaintiff's claims based on the 2018 ESM vacancy are without merit, though the complaint lays out the proper elements. It is unclear when plaintiff might have received sufficient evidence to learn that she could not carry her burden, or if further discovery on plaintiff's part could have eventually yielded the evidence she required. At any rate, the court does not find this matter so clearly frivolous by the summary judgment stage to deserve the sanction of attorney fees and the request is denied.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 69] will be **GRANTED** and plaintiff's claims under 42 U.S.C. § 1981 will be dismissed without prejudice as barred under the doctrine of sovereign immunity while her claims under Title VII and the Louisiana Employment Discrimination Law will be dismissed with prejudice for lack of merit.

**THUS DONE AND SIGNED** in Chambers this 11th day of August, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE